UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THEODORE M. BRUNELLE, | *CV-15-1480* |
| Plaintiff, | CIVIL ACTION NO. _____ |
| vs. | |
| CITY OF SCRANTON; PATRICK L. HINTON, individually, and in his capacity as Director of the City of Scranton's Department of Licensing, Inspections and Permits, | JURY TRIAL DEMANDED |
| | ELECTRONICALLY FILED |
| Defendants. | |

## COMPLAINT

Plaintiff, THEODORE M. BRUNELLE (hereinafter referred to as "Plaintiff"), by and through his attorneys, Rosenn, Jenkins & Greenwald, LLP, hereby complain of the above-captioned Defendants as follows:

## PARTIES

1. Plaintiff, THEODORE BRUNELLE (hereinafter, "BRUNELLE"), is an adult individual with address at 869 Richardson Road, New Milford, Pennsylvania 18834 and was, at all times relevant herein, a licensed contractor in the cities of Wilkes-Barre and Scranton, Pennsylvania.

2. Defendant, the CITY OF SCRANTON (hereinafter, the "CITY"), is a municipality duly incorporated within the Commonwealth of Pennsylvania and

843831.1

having offices located at 340 North Washington Avenue, Scranton, Lackawanna County, Pennsylvania 18503.

3. Defendant, PATRICK L. HINTON (hereinafter, "HINTON"), is an adult individual who is employed as the Director of the City of Scranton's Department of Licensing, Inspections and Permits. HINTON has held this position beginning in January 2014 up and through the filing of the instant lawsuit. At all relevant times hereto, HINTON was acting in his capacity as Director of the City of Scranton's Department of Licensing, Inspections and Permits with a principal office located at 340 North Washington Avenue, Scranton, Lackawanna County, Pennsylvania 18503.

## JURISDICTION & VENUE

4.    This action arises under the First, Fifth and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983.

5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 and the aforesaid statutory and constitutional provisions.

6.    The unlawful actions alleged herein were committed in Scranton, Lackawanna County, Pennsylvania, which is located in the Middle District of Pennsylvania, and therefore, venue is proper in this Court.

843831.1

7.   At all times relevant and material hereto, and with respect to all actions described herein, Defendants were acting under color of law and color of their authority as officials of the CITY.

8.   This action is brought against Defendant HINTON in both his individual and official capacities.

## FACTUAL BACKGROUND

9.   Defendant, CITY, is a Pennsylvania municipality that licenses building contractors pursuant to a set of ordinances that were amended and restated by the City Council of the City of Scranton in 1999 as Ordinance No. 155-199. These ordinances were codified as Chapter 203 of the Scranton City Code, entitled "Contractors."  A true and complete copy of Chapter 203 is annexed hereto as Exhibit 1 (hereinafter called the "Scranton Code").

10.   Plaintiff, THEODORE BRUNELLE, is the holder of four contractor licenses, all of which were validly issued, in full force and effect, and entitled to recognition in the City of Scranton, pursuant to express provisions of the Scranton Code.

11.   CITY and HINTON summarily revoked the two licenses maintained with the City of Scranton, and declared that the CITY would no longer recognize the two remaining licenses maintained with the City of Wilkes-Barre.

843831.1

12.    Effectively, HINTON revoked all four of BRUNELLE's licenses without affording a hearing or an appeal as provided in the Scranton Code to capriciously inflict harm on BRUNELLE and his business and to retaliate against BRUNELLE'S brother, Alexander Brunelle, and his business, Dunmore Exclusives LLC (hereinafter, "Dunmore Exclusives").

13.    In so doing, the CITY and HINTON acted in violation of the First, Fifth and Fourteenth Amendments to the United States Constitution and are liable for damages and other relief pursuant to 42 U.S.C. § 1983.

## A.    RELATED ACTION IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

14.    The facts of this case are part of a more extensive course of events giving rise to an action pending before the United States District Court for the Middle District of Pennsylvania and captioned <u>Alexander M. Brunelle, et al. v. City of Scranton, Patrick L. Hinton and Patricia Jennings-Fowler,</u> Docket No. 3:2015-cv-00960 (filed May 15, 2015) (the "Alexander Brunelle Action"). A copy of the Complaint in the Alexander Brunelle Action is attached, without exhibits, as Exhibit 2, and its contents are incorporated herein by reference.

15.    The Complaint in the Alexander Brunelle Action arises from a protracted, personally motivated and unlawful attack by the CITY and two of its officers, including HINTON, on Dunmore Exclusives LLC ("Dunmore"), a property development company and several of its affiliates.

4

843831.1

16.    Dunmore and its affiliates are owned and controlled by Alexander M. Brunelle, plaintiff in the Alexander Brunelle Action, and brother of THEODORE BRUNELLE.

17.    THEODORE BRUNELLE is not a party to the Alexander Brunelle Action.

18.    THEODORE BRUNELLE is not an officer, director or shareholder of any of the plaintiff entities in the Alexander Brunelle Action.

19.    However, the CITY is aware that THEODORE BRUNELLE is Alexander Brunelle's brother and has performed independent contractor services for the Plaintiff-entities in the Alexander Brunelle Action.

20.    The Complaint in the Alexander Brunelle Action, at pp. 30-32, ¶¶ 179-194, references attacks by the CITY against THEODORE BRUNELLE, and characterizes same as actions designed to cause emotional and reputational injury to Alexander Brunelle.

## B. UNLAWFUL AND ARBITRARY REVOCATION OF BRUNELLE'S CONSTRUCTION LICENSES

21.    The instant Complaint arises from the CITY's unlawful and retaliatory revocation of THEODORE BRUNELLE's contracting licenses in complete disregard of Plaintiff's constitutional rights.

22.    On June 29, 2010, the International Code Council certified that BRUNELLE had taken and passed the Pennsylvania examination for licensure as a

843831.1

**Master Plumber**.    A true copy of the "Official Results Report" for that examination is attached as Exhibit 3.

23.    On August 13, 2010, the International Code Council certified that BRUNELLE had taken and passed the Pennsylvania examination for licensure as a **Master Electrician**.    A true copy of the "Official Results Report" for that examination is attached as Exhibit 4.

24.    On August 20, 2010, the International Code Council certified that BRUNELLE had taken and passed the Pennsylvania examination for **Master Mechanical**.  A true copy of the "Official Results Report" for that examination is attached as Exhibit 5.

25.    In 2010, BRUNELLE also met the requirements and obtained the **General Contracting** license.

26.    In sum, BRUNELLE obtained the following four licenses from the City of Wilkes-Barre: Plumbing, Electrical Contracting, Mechanical Contracting (including HVAC) and General Contracting.

27.    Each of these licenses was issued to BRUNELLE in his individual capacity.

28.    Pursuant to a longstanding agreement recognized in Section 203-17 of the Scranton Code, entitled "Reciprocal Agreements," the cities of Scranton and

843831.1

Wilkes-Barre grant reciprocal recognition to contractor licenses issued by the other city.

29.    Pursuant to Section 203-17 of the Scranton Code, the CITY of Scranton recognized and accepted the two licenses granted to BRUNELLE by the City of Wilkes-Barre, in addition to the two licenses originally granted by the CITY of Scranton.

30.    BRUNELLE subsequently bifurcated his license as follows:

    i. BRUNELLE maintained primary licensure in Electrical Contracting and Mechanical Contracting with the City of Scranton, and reciprocal licensure with the City of Wilkes-Barre; and

    ii. BRUNELLE maintained primary licensure in Plumbing Contracting and General Contracting with the City of Wilkes-Barre and reciprocal licensure with the City of Scranton.

31.    Relying on the licenses, BRUNELLE commenced, invested in and conducted a successful and profitable business in the City of Scranton and elsewhere, providing construction, contracting and design services since 2006.

32.    BRUNELLE also completed multiple continuing education courses to maintain his licensures.

843831.1

33.    BRUNELLE has never been the subject of any disciplinary action or municipal complaint relating to the performance of his professional services.

34.    Throughout the years, BRUNELLE built a reputation of excellence in the Cities of Wilkes-Barre, Pittston, Scranton and in numerous surrounding municipalities.

35.    Dunmore Exclusives LLC and other entities affiliated with BRUNELLE's brother, Alexander Brunelle, were some of the clients of BRUNELLE and his BRUNELLE-affiliated entities.

36.    On September 23, 2014, HINTON, acting as Director of the Scranton Department of Licensing, Inspections and Permits, issued a letter to BRUNELLE and incorrectly addressed same to Dunmore Exclusives.

37.    Without citing any specific violations, HINTON alleged that BRUNELLE's "company [was] violating [the] City's Law in regard to Construction Code, Permits, Zoning Regulation and Condemnation Policy." .

38.    HINTON further stated:

> "I understand that you do not have a Scranton License to perform electrical, plumbing and mechanical work and apply for permits as you did not meet the requirements of City Ordinance 155 of 1999. However, you do have a Wilkes-Barre License to perform such work and you were allowed to work in Scranton even though you do not meet the City's standards.
>
> Be advised, this will be the *only* warning I will give regarding the above mentioned violations. If you or your company is found in violation again for any of the above I will be forced to

8

843831.1

block any and all permits that you apply for. **You will not be allowed to work in the City.**"

(Emphasis added.) A true copy of the letter is attached as <u>Exhibit 6</u>.

39.    In a letter dated September 30, 2014, BRUNELLE responded explaining that he was not an employee, officer, director or owner of Dunmore Exclusives and that any dispute between the CITY and Dunmore Exclusives LLC should not entail an attack on BRUNELLE's personal livelihood.  A true copy of the letter is attached as <u>Exhibit 7</u>.

40.    Having failed to respond for five months, on or about February 19, 2015, HINTON issued yet another letter to BRUNELLE entitled "License to Work in Scranton."

41.    The letter was, again, incorrectly addressed to BRUNELLE, care of Dunmore Exclusives, even though BRUNELLE was not a principal, owner, manager or member of Dunmore Exclusives.

42.    HINTON did not send a copy of the letter directly to BRUNELLE, even though BRUNELLE had provided HINTON with the correct address on September 30, 2014.

43.    The February 19, 2015 letter alleged no violations of the Scranton Code or any other law.

44.    Instead, without furnishing the particulars, the letter alleged that Dunmore Exclusives "handle[d] itself by continually violating City laws."

843831.1

45.    The February 19, 2015 letter then stated:

"In regards to your contractor's license(s) to work in the City, I have discovered you were issued a City Electrical and Mechanical license in error. You were issued these licenses on the basis of solely passing a test. You did not meet the requirements to receive a Masters Contractor license pursuant to FOC # 155 of 1999. Further, you do not hold a Plumbing Contractor License in Scranton, only a Wilkes-Barre Plumbing License. You were given a reciprocal good faith agreement by the previous Director of this Department to perform plumbing work within the City. **Unfortunately, my views differ drastically from his.**

Therefore, **your contractor's license(s) and any previous agreement you had to work in the City of Scranton are hereby revoked** on the basis of the above information. *This decision is to be implemented effective immediately.*"

(Emphasis added in bold; italics in the original). A true copy of Defendant HINTON's letter of February 19, 2015 is attached as Exhibit 8.

46.    The letter offered no opportunity for a hearing or an appeal, and HINTON has not, at any other time or in any other form, afforded BRUNELLE an opportunity for a hearing or an administrative appeal.

47.    Because the letter was incorrectly addressed, BRUNELLE did not learn of it until late April 2015.

48.    On April 29, 2015, Dunmore Exclusives wrote to HINTON, emphasized that the February 19, 2015 letter had been incorrectly addressed, and objected strenuously to the CITY's attack on BRUNELLE'S licenses. A true copy of this letter is attached as Exhibit 9.

843831.1

49.    Within days of this correspondence, HINTON wrote to one of the affiliates of Dunmore Exclusives, denying permits to effect repairs on a building at 506 Lackawanna Avenue, and threatening simultaneously to demolish the building for failure to make such repairs.

50.    The letter also refused to recognize BRUNELLE as the contractor for the project. A true copy of this letter is attached as Exhibit 10.

51.    Dunmore Exclusives responded by a letter dated May 4, 2015 to the Mayor of Scranton, Bill Courtright, urgently requesting that the CITY cease and desist from its harmful, arbitrary and capricious conduct.  A true copy of this letter is attached as Exhibit 11.

52.    Neither Mayor Courtright nor HINTON responded.

53.    On May 8, 2015, BRUNELLE attempted to remedy the situation by writing HINTON and requesting that he be recognized as the contractor for the 506 Lackawanna Avenue Project. A true copy of this letter is attached as Exhibit 12.

54.    Defendant HINTON did not respond.

55.    On May 11, 2015, BRUNELLE prepared and signed an "Application for Hearing before the Building Appeals Board" to appeal HINTON's unilateral and unlawful revocation of BRUNELLE's licenses. A true copy of this Application is attached as Exhibit 13.

56.    HINTON refused to accept the Application for filing.

843831.1

57.    HINTON demanded that the Application be filed on a prescribed form and that the application could not be filed because HINTON had to first determine whether such prescribed form existed.

58.    Attempting to meet the filing deadlines that HINTON imposed, BRUNELLE caused the Application to be filed with the CITY's Law Department and obtained a receipt of filing.

59.    BRUNELLE further detailed the events surrounding the filing of the Application in a letter to HINTON dated May 11, 2015. A true copy of that letter is attached as Exhibit 14.

## C.  UNLAWFUL RETALIATION AGAINST BRUNELLE FOLLOWING THE COMMENCMENT OF THE ALEXANDER BRUNELLE ACTION

60.    On May 15, 2015, as a result of numerous flagrant violations of constitutional rights by the CITY, Alexander M. Brunelle, Dunmore Exclusives LLC, and several other affiliated entities filed the Alexander Brunelle Action currently pending before the U.S. District Court for the Middle District of Pennsylvania against the CITY, HINTON and other City officials.

61.    On May 22, 2015, after the Complaint in the Alexander Brunelle Action had been filed, HINTON wrote another letter to BRUNELLE announcing that HINTON had unilaterally revoked BRUNELLE's construction licenses due to

843831.1

purported but undescribed violations of the Scranton Code. A true copy of this letter is attached as Exhibit 15.

62.    The letter did not reference BRUNELLE's attempted appeal of the revocations.

63.    Instead, the letter advised BRUNELLE that the CITY no longer had a Building Board of Appeals to hear license revocation cases and, instead, "recommended" that BRUNELLE appeal the matter to the Court of Common Pleas within 30 days.

64.    Legislating his own appeal procedures, HINTON relied on the advice of the CITY's Solicitor, but failed to cite any law, statutory or otherwise, vesting in him or in the Solicitor the power to unilaterally prescribe appeal procedures different from those purportedly afforded by the City Code.

65.    Defendants' actions were a blatant violation of the Scranton Code.

66.    The Scranton Code, in Sections 203-14 ("Ground for Refusal, Revocation or Suspension of Licenses") and 203-15 ("Procedure in Case of Violations; Appeals"), contains detailed requirements for the refusal, suspension or revocation of a contractor's license.

67.    As a precondition to a license suspension, the Scranton Code requires a prior notice of the alleged and specific violations, an opportunity for a hearing, and an opportunity for corrective action.

843831.1

68.    The Scranton Code implements gradually increasing sanctions to be imposed for the first, second and third offense and sets forth the allowed duration for each successive, adjudicated offense.

69.    The Scranton Code provides for a license revocation only upon the final adjudication of the third violation.

70.    The revocation is also subject to an administrative appeal.

71.    Specifically, Section 203-15(B)(1) provides that a license suspension or revocation is subject to "an appeal to the Board of Building Appeals," which includes "a public hearing" and consideration of the "evidence [and] testimony submitted."

72.    Section 203-15(B)(1) further specifies that action may be taken only upon a written decision of the Board of Building Appeals "in writing, stating [the] reasons therefor."

73.    No written decision of the Board of Building Appeals has been issued in the instant matter.

74.    To the contrary, BRUNELLE has never been disciplined, reprimanded, charged or found guilty of a first, second or third degree offense under the Scranton Code.

843831.1

75.    Neither the CITY nor HINTON gave notice of, or specifically alleged, any facts supporting their claims that BRUNELLE had violated the Scranton Code prior to the instant revocation of BRUNELLE's licenses.

76.    Neither the CITY nor HINTON afforded BRUNELLE any opportunity to respond to the CITY's allegations before revoking BRUNELLE's licenses as a contractor.

77.    BRUNELLE was not given an opportunity to adduce testimony, provide documentary evidence, or confront, cross-examine, rebut or challenge any witness or evidence against him.

78.    Neither the CITY nor HINTON provided a forum for the review, adjudication or appeal of the license revocation.

79.    Rather, HINTON and the CITY deliberately attempted to avoid an appeal or other administrative review of their actions.

80.    In effect, HINTON took on the role of a prosecutor, adjudicator and the appellate tribunal, in violation of the Scranton Code and the Due Process Clause of the United States Constitution.

81.    As a consequence and result of the aforesaid arbitrary, capricious and unlawful acts of the Defendants, BRUNELLE has suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of his reputation and embarrassment.

843831.1

82.    BRUNELLE further incurred damages caused by the interference with his business, and has been required, and will continue to be required, to spend substantial sums of money and time to respond to Defendants' unlawful, capricious and arbitrary conduct and remedy the effects of same.

## COUNT I

### 42 U.S.C. § 1983 – Fourteenth Amendment
### To the United States Constitution

### Procedural Due Process

### (Plaintiff v. Both Defendants)

83.    The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

84.    BRUNELLE has a constitutionally protected individual property interest in his contractor licenses falling within the Fourteenth Amendment's protection of "life, liberty, or property."

85.    Without due process of law, BRUNELLE has been subjected to the arbitrary, capricious and unlawful revocation of his contractor licenses by HINTON and the CITY, as fully described in this Complaint.

86.    The license revocations were carried out without pre-revocation notice of the alleged violations warranting such action.

87.    The license revocations were carried out without the right, as provided in the Scranton City Code, to cure any alleged violations.

843831.1

16

88.   The license revocations were carried out without a pre-revocation hearing.

89.   The license revocations were carried out without affording BRUNELLE the right to give pre-revocation testimony and to admit relevant evidence.

90.   The license revocations were carried out without affording BRUNELLE the pre-revocation right to confront and cross-examine adverse witnesses.

91.   The license revocations were carried out without affording BRUNELLE the pre-revocation right to have disputed issues decided by an impartial arbiter.

92.   The license revocations were carried out without affording BRUNELLE the right to a pre-revocation administrative appeal as required by the Scranton Code and due process of law.

93.   The license revocations were carried out in the absence of any emergency or other special circumstances that would have permitted revocation without a pre-revocation hearing.

94.   The license revocations were carried out without affording BRUNELLE a post-revocation hearing.

843831.1

95.    The license revocations were part of a maliciously intended, concerted effort by the CITY, through its officials, including HINTON, to indirectly injure and retaliate against BRUNELLE's brother, Alexander Brunelle, for actions that included the commencement of the Alexander Brunelle Action.

96.    As a consequence and result of the aforesaid acts of the Defendants, BRUNELLE has suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of his reputation, embarrassment, and damages caused by interference with his business.

WHEREFORE, BRUNELLE respectfully requests the following relief:

A.    the restoration of Plaintiff's unlawfully revoked building contractor licenses;

B.    a declaratory judgment that the policies, practices and acts complained of herein are illegal and unconstitutional;

C.    a permanent injunction enjoining the Defendants, their agents and employees from:

    i.    enforcing the CITY's laws, ordinances, policies and procedures in a discriminatory non-uniform way;

    ii.    utilizing the CITY's laws, ordinances, policies and procedures to harass and/or retaliate against BRUNELLE;

    iii.    utilizing the inspectors of the CITY's Department of Licensing, Inspections and Permits to harass and/or retaliate against BRUNELLE in the operation of his business;

    iv.    subjecting BRUNELLE to harassment and/or retaliation, or conspiring with others to do so, in their capacity as CITY officials;

843831.1

D.   compensatory and punitive damages;

E.   reasonable attorneys' fees and costs of suit; and

F.   such other and further relief as this Court may deem just and proper.

## COUNT II

### 42 U.S.C. § 1983 – Fourteenth Amendment to the United States Constitution

### Substantive Due Process

### (Plaintiff v. Both Defendants)

97.    The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

98.    The aforementioned actions of Defendants were arbitrary, irrational, outrageous, contrary to the CITY's own regulations, in bad faith, and designed to prevent Plaintiff from conducting his business.

99.    The CITY's actions were further aimed at retaliating against, intimidating, coercing and deterring BRUNELLE's brother, Alexander Brunelle, from exercising his First Amendment rights.

100.   As such, these actions constitute conduct which shocks the conscience and violates the Plaintiff's substantive due process rights as guaranteed by the Fourteenth Amendment of the Constitution of the United States.

843831.1

101.    The most notable examples of Defendants' conduct violating Plaintiff's substantive due process rights include, without limitation:

    A.   Revoking BRUNELLE'S contractor licenses without providing prior specific notice of any allegations of wrongdoing that would warrant such action;

    B.   Revoking BRUNELLE'S contractor licenses without providing an opportunity to be heard or an opportunity for BRUNELLE to defend himself with respect to any allegations that had been made against him;

    C.   Revoking BRUNELLE'S contractor licenses without providing an administrative appeal as required by the Scranton Code and due process of law.

102.    Defendants' actions shock the conscience as the actions were maliciously planned and carried out, not to address any wrongful conduct of BRUNELLE, but to retaliate indirectly against BRUNELLE's brother, Alexander Brunelle, and to deter him from exercising his First Amendment rights.

103.    Defendants treated BRUNELLE disparately to retaliate against BRUNELLE's brother, Alexander Brunelle, for his exercise of his First Amendment rights.

843831.1

104.   Defendants employed legal authority that had been entrusted to them for regulatory purposes for the coercive and corrupt purpose of preventing judicial scrutiny of their official conduct.

105.   Defendants' conduct was intentionally injurious and knowingly committed without justification.

106.   As a consequence and result of the aforesaid acts of the Defendants, BRUNELLE has suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of his reputation, embarrassment, and damages caused by the interference with his business.

WHEREFORE, BRUNELLE respectfully requests the following relief:

A.   the restoration of Plaintiff's unlawfully revoked building contractor licenses;

B.   a declaratory judgment that the policies, practices and acts complained of herein are illegal and unconstitutional;

C.   a permanent injunction enjoining the Defendants, their agents and employees from:

   i.   enforcing the CITY's laws, ordinances, policies and procedures in a discriminatory non-uniform way;

   ii.   utilizing the CITY's laws, ordinances, policies and procedures to harass and/or retaliate against BRUNELLE;

   iii.   utilizing the inspectors of the CITY's Department of Licensing, Inspections and Permits to harass and/or retaliate against BRUNELLE in the operation of his business;

843831.1

      iv.   subjecting BRUNELLE to harassment and/or retaliation, or conspiring with others to do so, in their capacity as CITY officials;

D.   compensatory and punitive damages;

E.   reasonable attorneys' fees and costs of suit; and

F.   such other and further relief as this Court may deem just and proper.

## COUNT III

### 42 U.S.C. §§ 1983, 1985 – Fourteenth Amendment to the United States Constitution

#### Equal Protection

**(Plaintiff v. Both Defendants)**

107.  The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

108.  Defendants have engaged in the intentional, purposeful, unequal and discriminatory enforcement of the CITY's laws, ordinances, policies and procedures against BRUNELLE.

109.  Defendants have administered the laws, ordinances, policies and procedures of the CITY with an evil intent and an unequal hand, so as to illegally discriminate against BRUNELLE.

110.  Defendants have conspired and acted in concert to intentionally apply the laws, policies and procedures of the CITY in a different and more onerous

22

843831.1

manner than applied to other similarly situated individuals based on the exercise by BRUNELLE and his brother, Alexander Brunelle, of their First Amendment rights to petition the government.

111.   The laws, ordinances, policies and procedures of the CITY have not been enforced in a uniform fashion within the CITY, but instead, BRUNELLE has been singled out for the revocation of his contractor licenses because of his family relationship with Alexander Brunelle.

112.   The CITY has caused, directed, approved and ratified the aforesaid actions of its officials constituting violations of BRUNELLE's constitutional rights.

113.   Defendants' enforcement of the CITY's laws, ordinances, policies and procedures violates the equal protection clause of the Fourteenth Amendment to the United States Constitution.

114.   As a consequence and result of Defendants' unlawful, arbitrary and capricious conduct, BRUNELLE has suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of his reputation, embarrassment, and damages caused by the interference with his businesses.

115.   Plaintiff has no adequate or complete remedy at law to address the violations of his constitutional rights.

WHEREFORE, BRUNELLE respectfully requests the following relief:

843831.1

A.   the restoration of Plaintiff's unlawfully revoked building contractor licenses;

B.   a declaratory judgment that the policies, practices and acts complained of herein are illegal and unconstitutional;

C.   a permanent injunction enjoining the Defendants, their agents and employees from:

    i.   enforcing the CITY's laws, ordinances, policies and procedures in a discriminatory non-uniform way;

    ii.   utilizing the CITY's laws, ordinances, policies and procedures to harass and/or retaliate against BRUNELLE;

    iii.   utilizing the inspectors of the CITY's Department of Licensing, Inspections and Permits to harass and/or retaliate against BRUNELLE in the operation of his business;

    iv.   subjecting BRUNELLE to harassment and/or retaliation, or conspiring with others to do so, in their capacity as CITY officials;

D.   compensatory and punitive damages;

E.   reasonable attorneys' fees and costs of suit; and

F.   such other and further relief as this Court may deem just and proper.

843831.1

## COUNT IV

### 42 U.S.C. § 1983

### (Plaintiff v. City of Scranton)

116.  The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

117.  The CITY and HINTON have caused, directed, approved and/or ratified the aforesaid actions of the CITY's officials constituting violations of BRUNELLE's constitutional rights.

118.  HINTON's conduct and actions, undertaken in his official capacity as the head of the City of Scranton's Department of Licensing, Inspections and Permits, constituted official policy-making on behalf of the CITY and established policy and practice of the CITY which caused the violations of BRUNELLE's constitutional rights set forth herein.

119.  The CITY's policies, practices and customs, as implemented by and/or acquiesced in by its municipal decision-makers and/or policymakers, caused the above constitutional violations.

120.  The CITY's failure to adequately train and supervise its employees at the Department of Licensing, Inspections and Permits amounts to a deliberate, malicious and wanton indifference and callous disregard of BRUNELLE's constitutional rights.

843831.1

121.    The CITY's failure to respond to BRUNELLE's attempts at communicating and resolving the alleged Scranton Code violations evidences deliberate, malicious and wanton indifference and callous disregard of BRUNELLE's constitutional rights.

122.    Defendants' acts were willful, wanton, malicious, oppressive and motivated solely by the desire to harm BRUNELLE and/or retaliate against BRUNELLE's brother, Alexander Brunelle, for the exercise of his First Amendment right to petition the government.

123.    As a consequence and result of Defendants' actions, BRUNELLE has suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of his reputation, embarrassment, and damages caused by the interference with his business.

WHEREFORE, BRUNELLE respectfully requests the following relief:

A.    the restoration of Plaintiff's unlawfully revoked building contractor licenses;

B.    a declaratory judgment that the policies, practices and acts complained of herein are illegal and unconstitutional;

C.    a permanent injunction enjoining the Defendants, their agents and employees from:

    i.    enforcing the CITY's laws, ordinances, policies and procedures in a discriminatory non-uniform way;

    ii.    utilizing the CITY's laws, ordinances, policies and procedures to harass and/or retaliate against BRUNELLE;

26

843831.1

     iii.   utilizing the inspectors of the CITY's Department of Licensing, Inspections and Permits to harass and/or retaliate against BRUNELLE in the operation of his business;

     iv.   subjecting BRUNELLE to harassment and/or retaliation, or conspiring with others to do so, in their capacity as CITY officials;

D.   compensatory and punitive damages;

E.   reasonable attorneys' fees and costs of suit; and

F.   such other and further relief as this Court may deem just and proper.

## COUNT V

### Tortious Interference with Existing and Prospective Business and Contractual Relationships

### (Plaintiff v. Both Defendants)

124.  The foregoing paragraphs of this Complaint are hereby incorporated by reference as if more fully set forth herein.

125.  BRUNELLE and his businesses benefited from the uninterrupted use of BRUNELLE's licenses and had the expectation of continued profit from same.

126.  By revoking BRUNELLE's contractor licenses for no reason, or without adequate Due Process, Defendants acted purposefully, intentionally, and willfully to deprive Plaintiff of his livelihood and to interfere with his business relationships.

843831.1

127.    As a consequence and result of the aforesaid acts of Defendants, BRUNELLE has suffered economic loss, loss of income, severe mental anguish, emotional distress, impairment of his reputation, embarrassment, and damages caused by the interference with his business.

WHEREFORE, BRUNELLE respectfully requests the following relief:

A.    the restoration of Plaintiff's unlawfully revoked building contractor licenses;

B.    a declaratory judgment that the policies, practices and acts complained of herein are illegal and unconstitutional;

C.    a permanent injunction enjoining the Defendants, their agents and employees from:

    i.    enforcing the CITY's laws, ordinances, policies and procedures in a discriminatory non-uniform way;

    ii.    utilizing the CITY's laws, ordinances, policies and procedures to harass and/or retaliate against BRUNELLE;

    iii.    utilizing the inspectors of the CITY's Department of Licensing, Inspections and Permits to harass and/or retaliate against BRUNELLE in the operation of his business;

    iv.    subjecting BRUNELLE to harassment and/or retaliation, or conspiring with others to do so, in their capacity as CITY officials;

D.    compensatory and punitive damages;

E.    reasonable attorneys' fees and costs of suit; and

F.    such other and further relief as this Court may deem just and proper.

843831.1

RESPECTFULLY SUBMITTED:

ROSENN, JENKINS & GREENWALD, LLP

BY:  DONALD H. BROBST, ESQUIRE
      DONALD H. BROBST, ESQUIRE
      PA. I.D. NO. 17833
      THOMAS J. CAMPENNI, ESQUIRE
      PA. I.D. NO. 87809
      MAGDA PATITSAS, ESQUIRE
      PA. I.D. NO. 318476
      15 South Franklin Street
      Wilkes-Barre, PA 18711-0075
      (570) 826-5652 – Telephone
      (570) 706-3409 – Facsimile

      ATTORNEYS FOR PLAINTIFF

843831.1